IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TAHIRIH JUSTICE CENTER,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, AND UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:21-cv-934 (TSE/TCB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR RECONSIDERATION**

Pursuant to Local Rule 7(F)(1) and Federal Rule of Civil Procedure 54(b), the United States Department of Homeland Security and United States Citizenship and Immigration Services (collectively, "Defendants") respectfully move this Court to reconsider its February 16, 2022 order (Dkt. No. 40) in this Freedom of Information Act, 5 U.S.C. §§ 551–59 (2018) ("FOIA") case and enter an order instructing the parties to confer after the production of further documents in February, March, and April 2022 as to the scope of the request and a proposed production schedule. Due to the large volume of documents that USCIS must review and significant resource constraints at USCIS, Defendants respectfully request that the Court reconsider its order to the extent it may be read to require USCIS to complete its entire production in response to Plaintiff's FOIA request by April 18, 2022.

**INTRODUCTION**

In this Freedom of Information Act ("FOIA") action, Plaintiff Tahirih Justice Center seeks records from United States Citizenship and Immigration Services ("USCIS"), a component

of the United States Department of Homeland Security ("DHS"), that are responsive to Plaintiff's extensive FOIA requests. Plaintiff seeks documents pertaining to eight categories related to USCIS's decision to switch from a "first-in, first-out" system to a "last-in, first-out" system for processing asylum applications. USCIS, despite being but one component of DHS, receives nearly 25% of the total FOIA requests received by the federal government *writ large*. USCIS is processing Plaintiff's request as quickly as possible in light of the overwhelming number of FOIA requests it is processing, its finite resources, and other litigation obligations. As a result of these challenges, USCIS is able to process records at a rate of 500 pages per month, but cannot complete its review by April 18, 2022, as this Court has ordered.

USCIS – in an abundance of caution – has construed the Court's Order as requiring completion of all processing, review, and production of documents in response to Plaintiff's FOIA request by April 2022. USCIS has already completed three monthly rolling productions, with another production scheduled for February 28, 2022. However, there are a total of **38,226** pages of documents remaining to be processed. Each of these documents must be reviewed page by page, as many of the pages may be duplicative or may fall outside of the scope of the request. Accordingly, in order to achieve completion of the processing of the remaining records by April 2022, USCIS would have to review 12,742 pages per month, remove any duplicate and out of scope pages, and process the remaining records by applying any applicable FOIA exemptions prior to release. As explained further below, processing in excess of 12,000 pages a month is well beyond the capacity of even the entire staff of five individuals at USCIS who process complex, high-volume FOIA requests such as Plaintiff's. USCIS generally does not process more than the 500 pages of records per month per matter given its significant resource

constraints and other FOIA obligations, which significantly include court orders requiring FOIA productions in other FOIA-related civil actions pending in other districts.

For the reasons stated below, Defendants do not believe that a production schedule needs to be set in this matter as USCIS has committed to reviewing at least 500 pages per month through April, at which point the parties can revisit what issues remain. However, if the Court is inclined to set a production schedule, it should set a schedule at that rate.

## **BACKGROUND**

### I.  Plaintiff's FOIA Requests and USCIS's Productions Thus Far

Plaintiff Tahirih Justice Center seeks to compel Defendant USCIS to respond to Plaintiff's two pending FOIA requests, dated July 5, 2019 and April 2, 2021. *See, e.g.*, Compl.; *see also* Compl. Exs. A, C. Those requests generally seek documents related to USCIS's decision to switch from a first-in, first-out system to a last-in, first-out system for processing asylum applications. *See id.*

During a meet and confer session after bringing suit in federal court – which was later memorialized in writing – Plaintiff informed USCIS that it was focused on the 2021 request. *See* Letter from Plaintiff's Counsel (Sept. 7, 2021), attached as Exhibit 1 to DEX A. The 2021 request contains eight broad categories of documents. *See* Compl. Ex. C. For example, many of the categories seek "any" documents concerning the underlying issues named in the request, as well as documents with information about "any" effort the agency has made since January 29, 2018 to eliminate its backlog of pending affirmative asylum applications. *Id.*; *see also Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999) ("The word 'any' is a term of great breadth."). During the aforementioned meet and confer session, Plaintiff also provided various "clarifications" to the categories contained in its 2021 request. *See* Decl. of Cynthia Munita,

DEX A, ¶ 24; *see also* Exhibit 1 to DEX A.  For example, Plaintiff clarified that the original request for "[a]ny records related to USCIS's decision to return to a LIFO system," "[a]ny records related to USCIS's decision to depart from the prior FIFO system," "[a]ny records related to the predicted, expected, or actual consequences of returning to a LIFO system," and "[a]ny records related to the predicted, expected, or actual effect of FIFO, LIFO, or other priority systems on that estimated waiting time," could be limited instead to "(1) documents showing the reasons for the policy(ies) or decision(s), and (2) documents showing the policy's or decision's effects on waiting times and the number of pending applications."  *See* Exhibit 1 to DEX A, at 2.

Even with these clarifications from Plaintiff, the breadth of the categories in Plaintiff's 2021 request remains astoundingly immense; indeed, leaving aside the complexity of merely searching for potentially-responsive material, USCIS is still faced with just short of **40,000** pages of documents *remaining* to review in order to determine whether the material is responsive to Plaintiff's clarified request, and if so, whether production of documents should be withheld in whole or in part under FOIA's exemptions.  DEX A, Decl. ¶ 16, 18.  And importantly, the search and review process is further complicated by the fact that the subject-matter of Plaintiff's request implicates the work of several different USCIS components with separate staff members. *Id.* ¶ 16.

USCIS nevertheless has been diligently working to provide Plaintiff with all responsive, non-exempt documents or non-exempt portions of the same to their requests in order to assist this Court in efficiently resolving this litigation.  Indeed, despite these challenges, USCIS has performed and completed its search for potentially responsive records to Plaintiff's request.

DEX A, ¶ 18.  Moreover, USCIS has made three rolling productions of responsive records, with a fourth production scheduled for February 28, 2022.  *Id.* ¶ 17.

Thus far, USCIS processed 1,023 pages of documents (in addition to 423 spreadsheets) in response to Plaintiff's clarified 2021 request, which has resulted in the production of 423 spreadsheets and 138 pages of documents, with certain information withheld pursuant to FOIA Exemptions 5, 6, and 7(E), which protect the agency's deliberative processes, personal privacy, and law enforcement information, respectively.  *Id.* ¶¶ 17; 22.  In addition, USCIS anticipates it will produce an additional rolling production on or about February 28, 2022 of 144 pages, which was the result of reviewing 2,499 pages of material.  *Id.* ¶ 17.  The production of potentially-responsive spreadsheets (which are far more time consuming to review) has been completed, and only the pages of non-spreadsheet material (such as emails, policy records, and other non-spreadsheet documents) await further review.  *Id.* ¶ 20.

After the above monthly productions are complete, USCIS will have approximately 38,226 pages of documents remaining to be processed.  *Id.* ¶ 18.  The number of pages remaining to be processed does not necessarily correlate to the number of documents that will be produced, because many documents may be determined to be out of scope or duplicative and thus non-responsive to the request.  However, without the individual employed by USCIS (known as a "FOIA processor") going through each page individually, there is no more expeditious way to process the records.  *Id.* ¶ 18; *see also infra* Part II.

At a further meet and confer held on February 11, 2022, counsel discussed the previous productions.  The parties then jointly filed a Joint Status Report and Second Joint Motion for a Production Schedule, which sought three additional monthly productions on the part of USCIS, followed by a discussion amongst the parties about how to proceed further with Plaintiff's

request. *See* Dkt. 39. USCIS believes that following the next three monthly rolling productions, Plaintiff may have a better idea of the records involved, and therefore the parties can negotiate as to ways that the subject matter could be further narrowed to reduce both the volume of records needed and the issues the Court will ultimately be asked to resolve between the parties. *See* DEX A, ¶ 24.

## II.    USCIS's Current FOIA Workload

The Department of Homeland Security is one of ninety-nine federal agencies subject to the FOIA, but USCIS – despite being but one component of DHS – receives nearly 25% of the total FOIA requests received by the federal government *writ large*. *See* DEX A, ¶ 4. In recent years, USCIS has experienced a significant increase in FOIA requests. *Id.* For example, during fiscal year ("FY") 2016, USCIS received 166,732 FOIA requests. During FY 2020, USCIS received 195,930 FOIA requests while *the entire government* received 790,000 requests; thus, USCIS accounted for almost one quarter of all requests to the entire federal government in FY 2020. By FY 2021, the number of requests to USCIS increased to 235,210, which represents over half of the total requests received by DHS (442,650). *Id.*

In addition to increased quantity of FOIA requests, USCIS has also experienced an increase in the complexity of requests and the volume of records sought by requesters. *Id.* ¶ 5. Managing the higher volume of records also presents its own challenges with IT infrastructure, technology, and workforce constraints. *Id.* ¶ 5.

While the majority of FOIA requests received by USCIS are filed by individuals seeking access to Alien files (A-Files), USCIS also receives a significant number of non-A-File FOIA requests, such as the request at issue in this case, for agency policies, data, communications, and other records. *Id.* ¶ 6. There are currently twelve processors responsible for non-A-File

requests. *Id.* ¶ 14. This group, known as the Significant Interest Group ("SIG") is made up of two teams, five processers of which are responsible for processing all matters in litigation as well as other cases not in litigation. Each SIG processor has multiple competing priorities, and handles multiple cases, many of which involve rolling monthly productions. *Id.* ¶ 14.

The agency's steps for processing non-A-File FOIA Requests is as follows: Upon receipt of a non-A file FOIA request, the USCIS National Record Center ("NRC") reviews the request to determine its nature and scope and identifies any and all USCIS offices that may have potentially responsive records. *Id.* ¶ 7. After the NRC has identified the relevant USCIS offices that may have potentially responsive records, the request is sent to those offices to conduct a search for responsive records. In addition to searching its own records, those offices are generally asked to identify any other USCIS offices that it believes could have potentially responsive records. The objective of this process is to devise and conduct a search that is reasonably calculated to uncover all potentially relevant and responsive records. *Id.* ¶ 8. Once the search is completed, the offices tasked with conducting a search provide the potentially responsive records to the NRC. *Id.* ¶ 9.

In order to review the potentially responsive records, USCIS employs information access professionals (known as "FOIA processors") who review every page of the potentially responsive records to determine whether the information falls within the scope of the request, needs to be referred to another government agency, is a duplicate, or is subject to an exemption pursuant to the FOIA. *Id.* ¶ 2, 11. USCIS's electronic case management system for FOIA, called the FOIA Immigration Records System, or "FIRST," does not have the capability to electronically identify duplicate documents from set of records in FIRST for processing. Accordingly, the FOIA processor must manually identify duplicates and mark them accordingly.

7

*Id.* In addition, FIRST is not capable of performing key word searches within responsive records to identify certain key terms within those records using optical character recognition. *Id.* ¶ 12.

Non-A-File requests are typically focused on agency policy records, and as such, often involve complicated and detailed requests for records requiring a lengthy processing time. *Id.* ¶ 13. Given the increase in the amount of FOIA requests, as well as the voluminous amounts of records responsive to complex requests, the NRC often works with requesters in order to narrow the scope of those complex requests to reduce the amount of records that the agency needs to process, so that requesters can receive the information sought expeditiously while removing extraneous documents that due to the broad wording of a request may have been deemed "responsive" but are actually outside of the subject matter of the request itself. This process is dependent on the cooperation of the requester and the subject matter of each request. *Id.* ¶ 13.

Due to the larger volume of responsive records associated with these complex requests, the NRC has at times provided responsive records pursuant to a rolling release schedule. Many of the requests involve responsive records with page counts in excess of 10,000 pages. In order to meet its obligations for all requests, appeals, and cases in litigation, and ensure that all FOIA matters progress so that each requester can receive responses, FOIA processors generally process around 500 pages per month for each case involving a rolling production. Any increase in production in one matter would significantly impact USCIS's ability to process records for productions in other matters. *Id.* ¶ 15.

### III. Procedural History

Plaintiff's instant FOIA action was transferred to this Court from the United States District Court for the Northern District of California on August 17, 2021. *See* Dkt. 25.

Defendants responded to the Complaint on September 30, 2021. Dkt. No. 30. On October 28, 2021, the Court granted Defendants' Unopposed Motion to Vacate the Scheduling Order. *See* Dkt. 37; *see also* Dkt. 34. The same day, the Court granted the parties' Joint Motion for a Production Schedule, which was brought after the parties, through their respective counsel, conferred on the most efficient method to resolve this litigation and to clarify the scope of Plaintiff's requests. *See* Dkt. 35, 36. Pursuant to the Joint Motion for a Production Schedule and the Court's Order, USCIS provided monthly rolling productions to Plaintiff in November and December 2021 and January 2022. *Id.*

In the Joint Motion for a Production Schedule, the parties stated that following the January 2022 production, the parties would confer to discuss the scope of the request and that they would file a status report with the Court by February 15, 2022, in order to apprise the Court of the progress the parties have made to resolve the matter. *See* Dkt. 35 at 2; Dkt. 36 at 1 (Court's Order granting the parties' Joint Motion). On that date, the parties filed a Joint Status Report and Second Joint Motion for a Production Schedule, in which the parties informed the Court that USCIS would "continue to process and provide records monthly to continue this rolling production in February, March, and April 2022." *See* Dkt. 38 at 2. The parties also informed the Court that in addition to those three productions, "the parties [would] continue to engage in good faith negotiations, including to determine the scope and production timeline for any remaining productions that are necessary." *Id.* Accordingly, the parties "propose[d] that they provide another status report in sixty days regarding whether any issues remain that need to be resolved by the Court. *Id.*

The next day, the Court granted the parties' Second Joint Motion for a Production Schedule. *See* Dkt. 40 (Feb. 16, 2022). The Court ordered "that USCIS will continue to make

9

monthly rolling productions in February, March, and April 2022." *Id.* However, *sua sponte*, the Court added that "USCIS must complete its productions of responsive documents no later than April 18, 2022. No further extensions will be granted." *Id.* USCIS, in an abundance of caution, has construed this as requiring completion of the processing and production of all documents in response to Plaintiff's request by April 2022.

## ARGUMENT

### I.     Legal Standard

Reconsideration of an interlocutory order is properly analyzed under Fed. R. Civ. P. 54(b). *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Under Rule 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted." *Am. Canoe*, 326 F.3d at 514-15. Therefore, "motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Id.* at 514 (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)). "The resolution of motions to reconsider pursuant to Rule 54(b) is committed to the discretion of the district court, which may be

exercised as justice requires." *TomTom, Inc. v. AOT Systems GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014) (Ellis, J.) (internal quotation marks omitted).

  II.  **USCIS Cannot Complete Its Entire FOIA Document Production by April 2022 in Light of the Breadth of Plaintiff's Requests and USCIS's Resource Limitations**

  USCIS, in an abundance of caution, has construed the Court's February 16, 2022 Order as requiring completion of the processing and production of all non-exempt documents and portions thereof in response to Plaintiff's FOIA requests by April 18, 2022. The Court issued this order without the benefit of briefing on the significant resource constraints at issue for USCIS in processing large, complex FOIA requests such as this one. *See* Dkt. 38-40. As noted above, and for the reasons explained below, this schedule exceeds the agency's capabilities as it requires reviewing approximately **13,000** pages of documents per months for Plaintiff's FOIA request – more than the 500 pages of records per month USCIS has the capacity to review given its other FOIA obligations, which significantly include court orders requiring FOIA productions in other FOIA-related civil actions pending in other districts. Defendants therefore ask the Court to reconsider its Order, and if the Court is inclined to set a production schedule, allow the parties to propose a schedule after the completion of the planned rolling monthly productions in February, March, and April 2022, so that the parties can continue to work collaboratively to resolve this FOIA action amicably and with as little judicial intervention as possible.

a.  As illustrated above, USCIS has been steadfastly endeavoring to complete its response to Plaintiff's FOIA request. Indeed, USCIS has completed its search and made three rolling productions as of the date of this motion, with a fourth production scheduled for February 28, 2022. *See* DEX A, ¶ 17.

  In order to respond to the multiple portions of the 2021 request, there are a total of 38,226 pages of documents remaining to be processed. *Id.* ¶ 21. Each of these documents must be

reviewed page by page, as many of the pages may be duplicative or may fall outside of the scope of the request. *Id.* Accordingly, in order to achieve completion of the processing of the remaining records by April 2022, USCIS would have to review 12,742 pages per month, remove any duplicate and out of scope pages, and process the remaining records by applying any applicable FOIA exemptions prior to release. *Id.*

Processing in excess of 12,000 pages a month is beyond the capacity of even the entire SIG litigation staff. As mentioned above, FOIA processors are able generally to process around 500 pages per month for each case involving a rolling production. *Id.* ¶ 19. Any increase in production in one matter would significantly impact USCIS's ability to process records for FOIA productions with respect to other pending requests; most importantly, those FOIA requests that are also in litigation before other federal judges who have already set production schedules through court order. At this time there are only twelve processors assigned to high-volume FOIA requests, five of which are assigned to matters in litigation such as Plaintiff's. *Id.* These staff are already processing multiple requests at 500 or more pages per month; and even if every one of the five individuals on the SIG litigation staff processed 500 pages a month for this case, that would still only result in 2,500 pages processed per month, well short of the 12,742 pages to complete review by April. This would also take these individuals away from processing other FOIA requests subject to a court ordered production schedule, thus jeopardizing USCIS's ability to comply with those judicial mandates. *Id.* ¶ 21.

b.  In addition to these resource constraints, at least three other aspects of this litigation counsel in favor of reconsidering the Court's Order. *First*, in this case, USCIS has made significant efforts to respond to Plaintiff's broad requests, even considering its resource constraints, as the FOIA processer has generally reviewed in excess of 500 pages per month. *Id.*

¶ 20. For instance, for the release to be made on February 28, 2022, 2,499 pages of potentially responsive pages were reviewed. Additionally, prior months involved the production of 423 spreadsheets (large Excel workbooks) responsive to the request which can take more time to process than individual pages of material. In other words, one spreadsheet is generally much larger and more time consuming to review than one corresponding page of written text, thus the production of 423 spreadsheets is generally a more time consuming effort than the production of 423 pages. The production of the spreadsheets has been completed, and only the pages of non-spreadsheet material (such as emails, policy records, and other non-spreadsheet documents) await further review. *Id.* Given USCIS's demonstrated commitment to producing records to Plaintiff as expeditiously as possible in light of its resource constraints, this Court should reconsider its order to the extent it requires all production to be complete by April 2022.

*Second*, USCIS and Plaintiff have been engaging in the process of working to narrow the scope of the request. *See* DEX A, ¶ 23. To do so, USCIS has been providing monthly rolling productions for Plaintiff to review, and has conferred with Plaintiff repeatedly to discuss the scope of the information produced. *Id.* ¶ 23. After meeting and conferring, counsel discussed the previous productions and the parties agreed to file the Joint Status Report and Second Joint Motion for a Production Schedule seeking three additional monthly productions in February, March, and April 2022 before the parties discussed further issues in this matter. *See* Dkt. 39. USCIS believes that following the next three monthly rolling productions, Plaintiff will likely have a better idea of the records involved, and therefore the parties can negotiate as to ways that the subject matter could be further narrowed to reduce both the volume of records for review and the issues the Court will ultimately be asked to resolve between the parties. *See* DEX A, ¶ 24.

The parties' demonstrated cooperation thus far counsels against the Court entering an end date for production at this time.

*Finally*, ordering USCIS to disclose responsive records to Plaintiff's request on an extraordinarily accelerated timetable threatens to risk disclosure of statutorily exempt material. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015) ("Requiring the agency to process and produce [the requested] material under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); *Protect Democracy Project U.S. Dep't of Defense*, 263 F. Supp. 3d 293, 302 (D.D.C. 2017) ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even led to the mistaken release of protected information."); *Baker v. Consumer Fin. Prot. Bureau*, 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released."). For this reason, the Court should reconsider the production schedule in its Order. *See* Dkt. 40. Indeed, previous releases had certain information withheld pursuant to FOIA Exemptions 5, 6, and 7(E), which protect the agency's deliberative processes, personal privacy, and law enforcement information, respectively. *See* DEX A, ¶ 22. Accelerating productions at the rate needed to finish production pursuant to the Court Order will increase the risk that statutorily exempt material may accidently be released. Thus, the Court should enter a schedule that permits the careful review of responsive records consistent with the agency's available resources.

In light of the extraordinary volume of documents remaining to review in this case, the Court should reconsider its Order to the extent it directs USCIS to complete production by April

2022 and order the parties to confer as to the production schedule of responsive records after the completion of the further rolling productions in February, March, and April 2022.

## CONCLUSION

Accordingly, Defendants respectfully request that this Court reconsider its February 16, 2022 Order requiring USCIS to complete its production of responsive documents by April 18, 2022. *See* Dkt. 40. Defendants ask that the Court order the parties to confer as to the production schedule of responsive records after the completion of the further rolling productions in February, March, and April 2022.

Dated: February 25, 2022               Respectfully submitted,

                                                                  JESSICA D. ABER
                                                                  UNITED STATES ATTORNEY

                                     *By*:     /s/
                                            ELIZABETH A. SPAVINS
                                            Assistant United States Attorney
                                            Office of the United States Attorney
                                            Justin W. Williams U.S. Attorney's Building
                                            2100 Jamieson Ave.
                                            Alexandria, Virginia 22314
                                            Tel:    (703) 299-3785
                                            Fax:   (703) 299-3983
                                            Lizzie.spavins@usdoj.gov

                                            *Counsel for Defendants*